No. 20-7702

# United States Court of Appeals
## for the Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DERICK FALLIN, A/K/A BLACK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland
The Honorable Richard D. Bennett, No. 1:11-cr-00353-RDB-1

## Brief of Defendant-Appellant Derick Fallin

WEST VIRGINIA UNIVERSITY
COLLEGE OF LAW
U.S. SUPREME COURT
LITIGATION CLINIC
101 Law Center Drive
Morgantown, WV 26056

Lawrence D. Rosenberg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
ldrosenberg@jonesday.com

Stephen C. Scott
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 394-9578
scscott@jonesday.com

*Counsel for Defendant-Appellant Derick Fallin*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Fourth Circuit Rule 26.1, appellant Derick Fallin, an individual, states that there are no corporate parties with a financial interest in the outcome of this appeal.

December 22, 2021                    */s/ Stephen C. Scott* _____

                                    Stephen C. Scott

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...................................................ii

TABLE OF CONTENTS ...............................................................................iii

TABLE OF AUTHORITIES ..........................................................................v

JURISDICTIONAL STATEMENT ................................................................1

INTRODUCTION ...........................................................................................1

STATEMENT OF ISSUES .............................................................................6

STATEMENT OF THE CASE ........................................................................6

    I.    Mr. Fallin's Presentencing Report .........................................7

        A. Base Offense Level Calculations ..........................................7

        B. Prior Felony Convictions ......................................................8

        C. Determination of Career Offender Status...............................8

    II.    The District Court Adopted the PSR .....................................11

    III.    The Supreme Court Created The Blueprint For Residual Clause Challenges Through Its 2019 Decision In Davis .........12

    IV.    Mr. Fallin's Instant 2255 Motion Challenging His Career-Offender Designation...............................................15

SUMMARY OF ARGUMENT .....................................................................17

STANDARD OF REVIEW ...........................................................................22

ARGUMENT .................................................................................................23

    I.    Mr. Fallin is Entitled to Section 2255 Relief for the Extraordinary Misapplication of the Career Offender Guidelines ...............................................................................23

        A. Section 2255 Relief Is Available For Extraordinary Misapplication Of The Guidelines.....................................23

        B. Mr. Fallin's Improper Career-Offender Designation Was Wrong In The First Instance—It Was Not Simply Invalidated By Later Case Law. ........................................29

C. Without This Court's Intervention, The Prejudice Associated With Mr. Fallin's Improper Career-Offender Designation Will Affect The Remainder Of His life ............. 32

D. Mr. Fallin Presents A "Debatable" Issue Warranting Issuance Of A Certificate Of Appealability ........................ 35

II. THE DISTRICT COURT ERRED BY FAILING TO DETERMINE WHETHER THE CONSPIRACY OFFENSES WERE "CRIMES OF VIOLENCE" UNDER THE CATEGORICAL APPROACH ........................ 36

III. NEITHER OF MR. FALLIN'S CONSPIRACY OFFENSES IS A CRIME OF VIOLENCE UNDER THE GUIDELINES ............................................ 38

CONCLUSION ........................................................................ 44

REQUEST FOR ORAL ARGUMENT ....................................... 45

CERTIFICATE OF COMPLIANCE ........................................... 46

CERTIFICATE OF SERVICE .................................................... 47

# TABLE OF AUTHORITIES

**Page**

Cases

*Alston v. United States*,
  290 F.Supp.3d 542 (E.D. Va 2017)................................................... *passim*

*Beckles v. United States*,
  137 S. Ct. 886 (2017)........................................................................15–16

*Buford v. United States*,
  532 U.S. 59 (2001) ......................................................................... 2, 24

*Daniels v. United States*,
  2019 WL 4167325 (M.D. Tenn Sept. 3, 2019)..........................................35

*Davis v. United States*,
  417 U.S. 333 (1974) ....................................................................... 23

*Descamps v. United States*,
  570 U.S. 254 (2013) .......................................................................40–41

*Hicks v. Oklahoma*,
  447 U.S. 343 (1980) ....................................................................... 33

*Hill v. United States*,
  368 U.S. 424 (1962) ....................................................................... 23

*In re Thomas*,
  988 F.3d 783 (4th Cir. 2021)............................................................. 15

*Johnson v. United States*,
  576 U.S. 591 (2015) ........................................................... 9, 15, 27, 39

*Mathis v. United States*,
  136 S. Ct. 2243 (2016)........................................................ 4, 21, 36, 41

*Miller-El v. Cockrell*,
  537 U.S. 322 (2003) .......................................................................20, 35

v

*Molina-Martinez v. United States*,
    136 S. Ct. 1338 (2016)................................................................32–34

*Nijhawan v. Holder*,
    557 U.S. 29 (2009)........................................................................ 40

*Peugh v. United States*,
    569 U.S. 530 (2013) ................................................................25, 33

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018)...........................................................14, 27

*Shepard v. United States*,
    544 U.S. 13 (2005)........................................................................ 41

*Stop Reckless Economic Instability Caused by Democrats v. Federal Election Com'n*,
    814 F.3d 221 (4th Cir. 2016)......................................................35

*Taylor v. United States*,
    495 U.S. 575 (1990) ......................................................... 36–37, 39

*United States v. Bryant*,
    949 F.3d 168 (4th Cir. 2020)...................................................40–41

*United States v. Cabrera-Gutierrez*,
    756 F.3d 1125 (9th Cir. 2013)...................................................... 40

*United States v. Cabrera-Umanzor*,
    728 F.3d 347 (4th Cir. 2013)....................................................... 37

*United States v. Dahl*,
    833 F.3d 345 (3rd Cir. 2016) .................................................34, 38

*United States v. Davis*,
    139 S. Ct. 2319 (2019).......................................................... *passim*

*United States v. Dozier*,
    848 F.3d 180 (4th Cir. 2017)...................................................36, 39

*United States v. Foote,*
    784 F.3d 931 (4th Cir. 2015)............................................................ *passim*

*United States v. Fluker,*
    891 F.3d 541 (4th Cir. 2018)........................................................... 35

*United States v. Garcia-Cartagena,*
    953 F.3d 14 (1st Cir. 2020)............................................................ 29

*United States v. Green,*
    996 F.3d 176 (4th Cir. 2021)........................................................ 22

*United States v. Jones,*
    914 F.3d 893 (4th Cir. 2019)..................................................... 1, 22

*United States v. Keene,*
    955 F.3d 391 (4th Cir. 2020)......................................................... 4

*United States v. Lisbon,*
    276 F.Supp.3d 456 (D. Md. 2017) ............................................... 3

*United States v. McCollum,*
    885 F.3d 300 (4th Cir. 2018)........................................... *passim*

*United States v. Merchant,*
    731 Fed. App'x 204 (4th Cir. 2018) ........................................ 43

*United States v. Mikalajunas,*
    186 F.3d 490 (4th Cir. 1999).................................................. 18, 23

*United States v. Newbold,*
    791 F.3d 455 (4th Cir. 2015)................................................... 18, 24

*United States v. Norman,*
    935 F.3d 232 (4th Cir. 2019)...................................................... 16

*United States v. Rangel-Castaneda,*
    709 F.3d 373 (4th Cir. 2013)...................................................... 39

*United States v. Sabillon-Umana,*
  772 F.3d 1328 (10th Cir. 2014) ............................................................... 34

*United States v. Simmons,*
  11 F.4th 239 (4th Cir. 2021) ......................................................... *passim*

*United States v. Simmons,*
  649 F.3d 237 (4th Cir. 2011) ........................................................... 24, 25

*United States v. Simms,*
  914 F.3d 229 (4th Cir. 2019) ..................................................... 12–14, 43

*United States v. Wheeler,*
  886 F.3d 415 (4th Cir. 2018) ................................................................ 33

*United States v. White,*
  620 F.3d 401 (4th Cir. 2010) ................................................................ 35

*United States v. Williams,*
  772 F. App'x 37 (4th Cir. 2019) ................................................ 5, 20, 31

*United States v. Winbush,*
  922 F.3d 227 (4th Cir. 2019) ................................................................ 32

*Whiteside v. United States,*
  748 F.3d 541 (4th Cir. 2014) ......................................................... *passim*

*Whiteside v. United States,*
  775 F.3d 180 (4th Cir. 2014) ................................................................ 25

STATUTES

18 U.S.C. § 16 ....................................................................................... 14

18 U.S.C. § 924(c) ...................................................................... *passim*

18 U.S.C. § 924(e)(2)(B) .................................................................. 9, 14

18 U.S.C. § 1962(d) .............................................................. 6, 16, 19

18 U.S.C. § 1959(a) .................................................................... *passim*

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 2255 ............................................................................ *passim*

U.S.S.G. § 1B1.11(a) ........................................................................ 3

U.S.S.G. § 2A1.5(a) .......................................................................... 7

U.S.S.G. § 2A1.5(b)(1) ..................................................................... 7

U.S.S.G. § 3D1.4 .............................................................................. 7

U.S.S.G. § 4A1.1(a) ......................................................................... 9

U.S.S.G. § 4A1.1(a) cmt n.1 ............................................. 5, 10, 20, 31

U.S.S.G. § 4A1.1(b) ......................................................................... 9

U.S.S.G. § 4A1.1(c) ......................................................................... 9

U.S.S.G. § 4B1.1(a) ........................................................... 3, 8–9, 38

U.S.S.G. § 4B1.2 ..................................................................... *passim*

U.S.S.G. § 7B1.1 ........................................................................... 29

U.S.S.G. amendment 798 (eff. Aug. 1, 2016) ............................. 9, 39

**OTHER AUTHORITIES**

Fed. R. Evid. 201(c)(2) .................................................................. 34

Fed. R. Evid. 201(b) ...................................................................... 34

Rule 11 of the Rules Governing Section 2254 Cases and Section 2255
     Proceedings .......................................................................... 17

United States Sentencing Guidelines, *2015 Quick Facts*,
     https://www.ussc.gov/sites/default/files/pdf/research-and-
     publications/quick-
     facts/Quick_Facts_Career_Offender_FY15.pdf.pdf .................... 34

## JURISDICTIONAL STATEMENT

On October 26, 2020, the district court entered final judgment against Defendant-Appellant Derick Fallin, denying his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. *See* JA126. Mr. Fallin filed a timely notice of appeal on November 10, 2020. *See* JA138. This Court has jurisdiction over the district court's final order denying him Section 2255 relief under 28 U.S.C. § 1291. *See United States v. Jones*, 914 F.3d 893, 898–99 (4th Cir. 2019).

## INTRODUCTION

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held that 18 U.S.C. § 924(c)(3)'s residual clause for a "crime of violence" was unconstitutionally vague, and, therefore, § 924 could not charge conspiracy to commit Hobbs Act robbery as a predicate "crime of violence" because it depended on that residual clause. In so holding, the Court explicitly stated that the problem with the residual clause implicated an issue of a "constitutional dimension." *Id.* at 2327. The holding in *Davis* supersedes *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), in which this Court held that a career-offender designation correct was not a "defect of a fundamental nature" or comparable to a "violation of a statute or constitutional provision" when the designation was correct at the time of sentencing and only later invalidated by case law. *Id.* at 942. After *Davis*, a challenge to an incorrect career-offender designation depending on a finding that an offense is a

1

crime of violence is also of "constitutional dimension" and thus raises a "defect of a fundamental nature." Accordingly, Mr. Fallin is able to rely on *Davis* to challenge his career-offender designation.

Here, Mr. Fallin has been mislabeled a "career offender" even though he does not belong in this "category of offender[s] subject to particularly severe punishment." *Buford v. United States*, 532 U.S. 59, 60 (2001). Most importantly, his conspiracy offenses, the "instant" offenses that the district court reasoned qualify him for his career-offender designation, are not crimes of violence under plainly controlling Fourth Circuit law. Moreover, given that he finished serving his sentence for a 1980 bank robbery conviction 18 years before his conspiracy charges, that conviction cannot be one of his predicate, prior felony convictions for his career-offender designation either. And under the Supreme Court's decision in *Davis*, it is now clear that a challenge to an improper career-offender designation is a fundamental defect of constitutional dimensions that can be challenged in a Section 2255 motion.

Almost a decade ago, the United States District Court for the District of Maryland concluded that Mr. Fallin was a "career offender" under § 4B1.1 of the 2011 United States Sentencing Guidelines. It reasoned, in relevant part, that both of his then-instant conspiracy offenses qualified as a "crime of violence." *See* U.S.S.G.

§ 4B1.1(a) (2011); *see also id.* at § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). "Crime of violence," in turn, meant that the offense (1) "has [as] an element the use, attempted use, or threatened use of physical force against the person of another" (force clause); (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives" (enumerated clause) or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (residual clause). *See id.* at § 4B1.2(a).

Although a "controlled substance offense" is another pathway for a career-offender designation under the Guidelines, neither of Mr. Fallin's conspiracy offenses is such a controlled substance offense. Neither conspiracy offense satisfies the meaning of a controlled substance as set forth by the Sentencing Guidelines, because neither conspiracy offense has as a necessary element the involvement of a controlled substance. *See* U.S.S.G. § 4B1.2(b) (2011); *see also United States v. Lisbon*, 276 F. Supp.3d 456, 459 (D. Md. 2017) (concluding that "RICO conspiracy does not constitute a 'controlled substance offense' subject to enhancement under the career offender provision."). Consequently, the relevant question for Mr. Fallin's career-offender designation is whether his conspiracy offenses are crimes of violence. But the district court determined that his offenses were crimes of violence without application of the required categorical approach.

3

The Supreme Court made the significance of the categorical approach clear in *Davis*. There, in holding that the residual clause of 18 U.S.C. § 924(c) was unconstitutionally vague, the Court applied its "traditional categorical approach." *Id.* at 2327; *see Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (explaining that the categorical approach focuses "solely on whether the elements of the crime of conviction sufficiently match the elements" of an enumerated offense). That approach, the Court noted, involves "consequences . . . of [a] constitutional dimension." 139 S. Ct. at 2327; *see also United States v. Keene*, 955 F.3d 391, 398 (4th Cir. 2020) ("We also observe that the practical and constitutional concerns underlying the categorical approach are not present here.").

Mr. Fallin relied on *Davis* in seeking Section 2255 relief, arguing below that the district court should revisit its crime-of-violence determination regarding his conspiracy offenses and properly apply the categorical approach. The district court, however, did not do so. In its view, because Mr. Fallin was not convicted under 18 U.S.C. § 924(c), *Davis* was inapplicable.

But the district court's conclusion is erroneous. Under controlling law, Mr. Fallin is not a career offender. Before and after the district court's conclusion below, Fourth Circuit precedent has held repeatedly that conspiracy offenses are not categorically crimes of violence. In *United States v. McCollum*, 885 F.3d 300 (4th

Cir. 2018), this Court held that a prior conviction for conspiracy to commit murder in aid of racketeering is not a crime of violence. And this year, this Court held in *United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021), that *all* RICO conspiracy convictions are categorically not crimes of violence. *See id.* at 257, 261. *Davis* also is clear that the traditional categorical approach is the *only* approach controlling a residual-clause analysis. *See Davis*, 139 S. Ct. at 2326–27. Accordingly, neither of Mr. Fallin's conspiracy offenses qualifies as a "crime of violence" for a career-offender designation under the 2011 Guidelines.

On top of this, to be a career offender, Mr. Fallin must have had two prior qualifying predicate offenses, and he does not. For a prior conviction imposed more than 15-years before sentencing for the instant offense to qualify as a predicate offense, the period of incarceration for the predicate offenses must extend into this 15-year period. *United States v. Williams*, 772 F. App'x 37, 41 (4th Cir. 2019) (applying U.S.S.G. § 4A1.1(a) cmt n.1 (2011)); *see also* U.S.S.G. § 4B1.2(c) (2011). Mr. Fallin's incarceration for his 1980 bank robbery conviction ended in 1994. He pled guilty to his conspiracy offenses 18 years later, well outside the 15-year period.

This compounded sentencing error cannot be ignored. For the reasons contained herein, this Court should follow *Davis*, *McCollum*, and *Simmons* to ensure

that Mr. Fallin's mislabeling as a career offender is corrected. Failing to rectify this wrong leaves Mr. Fallin with an improper career-offender designation contrary to this Court's precedent. Therefore, this Court should grant the certificate of appealability, vacate Mr. Fallin's sentence, and remand for resentencing.

## STATEMENT OF ISSUES

I.    Does *United States v. Davis*, 139 S. Ct. 2319 (2019), establish that a career-offender designation depending on finding an underlying offense to be a crime of violence raises an issue of a constitutional dimension that requires application of the categorical approach and can be raised under 28 U.S.C. § 2255?

II.    Did the district court reversibly err by failing to consider whether Mr. Fallin's conspiracy offenses are crimes of violence under the categorical approach?

III.    Are Mr. Fallin's conspiracy offenses categorically crimes of violence?

## STATEMENT OF THE CASE

On June 28, 2011, through a Grand Jury Indictment, Mr. Fallin was charged with eight counts, including as relevant here:

- conspiracy to engage in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d) (Count One), *see* JA13, JA14; and

- conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count Two), *see* JA24.

6

On May 22, 2012, he pled guilty only to these two conspiracy counts pursuant to a plea agreement. *See* JA34. Mr. Fallin and the government agreed in his plea agreement that 180 months of imprisonment was an appropriate sentence. *See* JA38. Although Mr. Fallin waived his rights to appeal his sentence in certain respects, Mr. Fallin did not wave his right to appeal his sentence to the extent it "resulted from arithmetical, technical, or other clear error." JA39.

## I.     MR. FALLIN'S PRESENTENCING REPORT

### A. Base Offense Level Calculations

Mr. Fallin's Presentencing Report ("PSR") calculated that his base offense level was 33 pursuant to U.S.S.G. § 2A1.5(a), in light of the charge of conspiracy to commit murder in aid of racketeering. *See* SA7. Mr. Fallin then received a four-level increase pursuant to U.S.S.G. § 2A1.5(b)(1) due to his offense involving an offer of something of pecuniary value for the conspired murder. *See* SA7. He also received a two-level enhancement pursuant to U.S.S.G. § 3D1.4 for this offense because it was more serious by one level than his offense level for conspiracy to engage in a racketeering enterprise (it was 36). *See* SA7. His combined adjusted offense level of 39 was reduced by two levels for acceptance of responsibility for a total offense level of 37. *See* SA8.

## B. Prior Felony Convictions

The PSR also listed under Mr. Fallin's criminal history his prior adult criminal convictions, two of which are relevant here. On May 8, 1980, he was charged with bank robbery and pled guilty to that offense on August 15, 1980. *See* SA9. On September 12, 1980, the United States District Court for the District of Colorado sentenced him to 12 years of imprisonment. *See id.* After serving more than two years of his sentence, on September 10, 1982, he received parole, but, on October 7, 1987, it was later revoked, without full credit for time served. *See id.* He served the remainder of his sentence until his release on November 25, 1994. *See id.*

Thereafter, on June 26, 1986, he was charged with conspiracy to distribute more than 100 grams of heroin, and pled guilty to that offense on October 2, 1986. *See* SA10. On April 14, 1987, the United States District Court for the District of Maryland sentenced him to eight years of imprisonment. *See id.* He ultimately completed his sentence on March 22, 2001. *See* SA11.

## C. Determination of Career Offender Status

The PSR concluded that "the defendant is a Career Offender under U.S.S.G. § 4B1.1(a)" because he satisfied the three requirements for a career-offender designation. SA8. These requirements under the 2011 Guidelines were as follows:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a

8

> controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2011). "Crime of violence" meant an applicable offense that (1) "has [as] an element the use, attempted use, or threated use of physical force against the person of another" (force clause); (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives" (enumerated clause) or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (residual clause).[1] *Id.* at 4B1.2(a).

Further, "two prior felony convictions" meant "(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense" and "(2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c)." U.S.S.G. § 4B1.2(c). The

---

[1] In 2016, the Commission removed the residual clause from the definition of "crime of violence" following the Supreme Court's decision in *Johnson,* 576 U.S. 591 (2015). *See* U.S.S.G. amendment 798 (eff. Aug. 1, 2016). There, the Court concluded that the residual clause for the definition of a "violent felony" under the Armed Career Criminal Act violated the Due Process Clause because it was unconstitutionally vague. *See* 135 S. Ct. 2551. The residual clause at issue was defined to include any felony that "involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 2554 (quoting 18 U.S.C. § 924(e)(2)(B)). That definition was similar to that of crime of violence's residual clause under the Guidelines. The definition of crime of violence currently only includes the force clause and the enumerated clause.

measuring date for when a date "sustained a conviction" was "the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*." *Id.* A sentence "imposed more than fifteen years prior to the defendant's commencement of the instance offense [wa]s not counted unless the defendant's incarceration extended into this fifteen-year period." *Id.* at § 4A1.1(a) cmt n.1.

Based on these requirements, the PSR concluded that Mr. Fallin was a career offender for the following reasons. He was "at least 18" at the time of his conspiracy offenses of engaging in a racketeering and committing murder in aid of racketing. *See* SA8. His "instant offense" (i.e. either of his conspiracy offenses) "involves either a controlled substance offense or a crime of violence." *See id.* And according to the PSR, his "two prior felony convictions for either a crime of violence or controlled substance offense" were his 1980 bank robbery conviction (sentence finished in 1994) and his 1987 conspiracy to distribute heroin conviction (sentence finished in 2001). *See id.*

The PSR ultimately calculated his offense level as 39. *See* SA8. His career-offender designation affected the calculation of his Criminal History Category. *See* SA12. His Criminal History Category was initially a IV (eight points total for his

10

criminal convictions), but was changed to a VI in light of his career-offender designation. *See* SA12.

## II.    THE DISTRICT COURT ADOPTED THE PSR.

On August 20, 2012, at his sentencing, the district court adopted the PSR's conclusions, including his two prior felony convictions making him a career offender. *See* JA52–53. The district court then found that Mr. Fallin's Guidelines range for his sentence was 324 to 405 months because he had an offense level of 36[2] and a Criminal History Category of VI. *See* JA53. No one at Mr. Fallin's sentencing hearing detected any errors with the court's determination of his career-offender designation.

Mr. Fallin and his counsel emphasized his desire to "put all this behind [him] and move on with [his] life." JA59; *see also* JA57 (the government noted "[h]e will not be released from federal prison until he's 65"); JA59 (explaining he "was trying to resolve the case with a sentence that would enable him to have some life left when he got out of prison"). He hoped that, after his sentence, he would live "his life in the future in a peaceful manner," given the "circumstances and [his] health

---

[2] As explained, *supra* p.7, his offense level of 39 was reduced to 37 for acceptance of responsibility. During sentencing, the government moved for an additional one level reduction for acceptance of responsibility. This reduction caused his total offense level to reduce from 37 to 36. *See* JA51.

concerns." JA60. He believed he would "continue to suffer greatly from [his] gunshot wounds" that he received before his arrest following the Grand Jury Indictment. JA59. And, until his release, he would be separated from his "30-year-old daughter" and "5-year-old son." JA61 . Even then, he would be released to find a job with a "limited," one-year employment record. *Id.*

With all this in consideration, the district court ultimately accepted his plea and sentenced Mr. Fallin to 180 months for his conspiracy to participate in a racketing enterprise offense and 120 months for conspiracy to commit murder in aid of racketeering, for a total sentence of 180 months, followed by five years of supervised release. *See* JA62, JA64. Mr. Fallin did not appeal this sentence.

### III.    THE SUPREME COURT CREATED THE BLUEPRINT FOR RESIDUAL CLAUSE CHALLENGES THROUGH ITS 2019 DECISION IN *DAVIS*.

The Supreme Court and this Court have analyzed the constitutionality of different parts of 18 U.S.C. § 924(c)(3)(B)'s definition of a "crime of violence." *See, e.g., Davis*, 139 S. Ct. 2319 (2019); *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019).

In *Simms*, this Court concluded § 924(c)(3)(B)'s definition of "crime of violence" in its entirety was unconstitutionally vague. 914 F.3d at 232. Section 924(c)(3)(B) defines "crime of violence" as a felony offense that either (a) "has [as] an element the use, attempted use, or threatened use of physical force against the

12

person or property of another" (force clause) or (b) "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (residual clause). *Id.* at 233 (quoting § 924(c)(3)). To determine whether this two-pathway definition satisfied due process, this Court applied the "categorical" approach where "courts consider only the crime as defined, not the particular facts in the case." *Id.*

The Court applied the "*elements-based* categorical approach" when analyzing § 924(c)(3)'s force clause. *See id.* at 233. That approach "begins and ends with the offense's elements." *See id.* Critically, "[w]hen a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." *See id.* In sum, the Court determined that conspiracy to commit Hobbs Act robbery is not categorically a crime of violence under the force clause. *Id.* The Court reasoned that a conviction of the offense is possible by "prov[ing] only that the defendant agreed with another to commit actions that, if realized, would violate the Hobbs Act." *Id.* at 233–34. That agreement to do so "does not invariably require the actual, attempted, or threatened use of physical force." *Id.* at 234.

Turning to § 924(c)(3)'s residual clause, the Court applied the "ordinary-case categorical approach." *See id.* at 234. This approach is "broader than the elements-

13

based categorical approach in the sense that force need not actually be applied." *See id.* (internal quotation marks and citation omitted). Rather, a court "must use the statutory definition of an offense to imagine its 'ordinary case,' and then consider whether this imagined ordinary case entails a 'substantial risk' of force." *Id.* (internal quotation marks and citations omitted). The Court determined that conspiracy to commit Hobbs Act robbery is not categorically a crime of violence under the residual clause because it is unconstitutionally vague. *See id.* at 236. The Court explained the premise that § 924(c)(3)(B) requires the ordinary-case categorical approach to demonstrate the "wholly speculative" nature of the inquiry with "no guidance on how to do" it. *See id.* (citing *Johnson v. United States*, 576 U.S. 591 (2015) (holding the residual clause of 18 U.S.C. § 924(e)(2)(B) was unconstitutionally vague), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (holding the residual clause of 18 U.S.C. § 16 was unconstitutionally vague)).

Five months later, the Supreme Court resolved a circuit split regarding the constitutionality of § 924(c)'s residual clause and sided with this Court's conclusion in *Simms*. *See Davis*, 139 S. Ct. at 2323, 2325 & n.2 (collecting circuit decisions). There, the Court announced that, when faced with a residual clause for a definition of a crime of violence or similar definition, "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a

crime's imagined 'ordinary case.'" *Id.* at 2326 (citing *Johnson* and *Dimaya*). Further, the Court stated that the "traditional categorical approach" involves "consequences . . . of [a] constitutional dimension." *Id.* at 2325. There, application of the categorical approach involved "the twin constitutional pillars of due process and separation of powers." *Id.* at 2325. *Davis* is now retroactive to cases on collateral review. *See In re Thomas*, 988 F.3d 783 (4th Cir. 2021).

## IV. Mr. Fallin's Instant 2255 Motion Challenging His Career-Offender Designation.[3]

On June 1, 2020, Mr. Fallin filed *pro se* his current motion to vacate, arguing that he was improperly classified as a career offender. *See* JA98. Mr. Fallin relied on *Davis* to argue that his motion was timely. *See* JA101, JA102.

The government opposed his motion entirely upon Mr. Fallin's reliance on *Davis*. *See* JA113. The government argued that *Davis* was inapplicable because neither of his conspiracy offenses was for a § 924(c) conviction. *See* JA116–17. The government further argued that the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017) barred his vagueness argument. *See* JA117. There, the Court held that, on the merits, the Guidelines "are not subject to a

---

[3] Mr. Fallin filed pro se three motions to vacate this sentence that he later withdrew. This is his first operative 2255 motion.

vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness." 137 S. Ct. at 895.[4]

In reply, Mr. Fallin clarified that his argument was not based on vagueness grounds. *See* JA108 –09. Rather, he contended that his conspiracy offenses "no longer qualif[y] as [ ] crime[s] of violence in wake of the Davis/Simms duo." JA109.

The district court denied Mr. Fallin's motion based on the government's response. *See* JA133. The district court concluded that his challenge under *Davis* failed because he was charged under 18 U.S.C. § 1962(d) (Count One) and 18 U.S.C. § 1959(a)(5) (Count Two), rather than under 18 U.S.C. § 924(c), which was at issue in *Davis*. *See* JA130. The district court also concluded that *Beckles* foreclosed vagueness challenges to the Guidelines, and that even without the career-offender designation his "advisory guidelines range would have been 262 to 327 months." JA131.

On November 3, 2020, Mr. Fallin filed a Motion to Supplement his Pending 2255 with Supporting Case law, to raise additional case law in support of his Motion to Vacate, including *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019)

---

[4] *Beckles* is not at issue here, and Mr. Fallin is not raising a merits vagueness challenge to the residual clause of the 2011 Guidelines. Mr. Fallin relies on *Davis* for the threshold issue of his entitlement to Section 2255 relief due to his career-offender designation under the 2011 Guidelines.

(explaining that *McCollum* was controlling and concluding that conspiracy to possess cocaine and cocaine base with intent to distribute is not a controlled substance offender under the Guidelines). *See* JA135. On November 10, 2020, Mr. Fallin filed a timely Notice of Appeal to the Fourth Circuit. *See* JA138. On November 30, 2020, Mr. Fallin moved for a certificate of appealability,[5] amicus briefing, appointment of counsel, and oral argument. *See* ECF No. 7. On that same day, the Court deferred action on these motions. *See* ECF No. 8. The Court later appointed Mr. Rosenberg and the West Virginia University Supreme Court Clinic to represent Mr. Fallin in this appeal. *United States v. Fallin* (4th Cir.), ECF No. 13.

## SUMMARY OF ARGUMENT

This Court should grant the certificate of appealability, vacate Mr. Fallin's sentence, and remand for resentencing.

**I.** *First*, Mr. Fallin is entitled to 28 U.S.C. § 2255 relief for the extraordinary misapplication of the career-offender Guidelines. The Supreme Court in *Davis* provides the blueprint for him to challenge the "residual clause" of the crime of violence definition under the Guidelines. And, generally, it enables the

---

[5] Pursuant to Rule 11 of the Rules Governing Section 2254 Cases and Section 2255 Proceedings, "[i]f the [district] court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."

district court to examine the compounded error of his improper career-offender designation at the time of his sentencing.

> **A.**    This Court held that "ordinary misapplication of the [G]uidelines . . . does not amount to a miscarriage of justice." *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999).   But, it has wrestled with what constitutes an "extraordinary misapplication."  *See United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015) (emphasis added).  *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015) held that a career-offender enhancement that is later invalidated by case law is not a miscarriage of justice and reasoned so because it "would be remiss to place an erroneous Guidelines classification under an advisory scheme in the same category as violation of a statute or constitutional provision."  *Id.* at 942.

> **B.**    *Davis* now supersedes *Foote*, and clarifies how a residual-clause challenge raises issues of constitutional dimensions, like the residual clause under the Guidelines by:  (1) reaffirming the necessity of applying *only* the "traditional categorical approach" to a "crime of violence" determination, 139 S. Ct. at 2327; (2) holding that residual clauses are an inherent miscarriage of justice as their interpretation "depend[s] on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case," *id.* at 2326; and (3) and emphasizing that residual clauses implicate issues of a "constitutional dimension." *Id.* at 2327.  *Foote* did not

have the benefit of *Davis* in articulating its conflicting analysis. But the Supreme Court has made clear that a residual clause challenge does in fact raise a fundamental defect of constitutional dimensions. Whether the residual clause at issue is contained in a statute or under the Guidelines is immaterial. *All* residual clauses implicate issues of a constitutional dimension, and, therefore, may be challenged.

      **C.**    In any event, *Foote* is a far cry from this case. The Court held it was "constrained to decide that sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is *later invalidated*" is not a cognizable Section 2255 claim. 784 F.3d at 936 (emphasis added). Mr. Fallin's career-offender designation was *always* invalid at the time of his sentence. His conspiracy to engage in a racketeering enterprise (18 U.S.C. § 1962(d)) and conspiracy to commit murder in aid of racketeering (18 U.S.C. § 1959(a)(5)) offenses were *never* crimes of violence. That was true even before *United States v. McCollum*, 885 F.3d 300 (4th Cir. 2018), and *United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021), together reiterated that neither of his conspiracy offenses is a crime of violence. His 1980 bank robbery conviction was *never* a prior felony offense that could be at play for his career-offender designation. He finished his sentence in 1994. He pled guilty to his conspiracy offenses in 2012. That 18-year time difference between the completion of his bank robbery incarceration and his

guilty plea precludes consideration of his bank robbery offense as one of his two prior felonies. With only his 1987 conspiracy to distribute heroin offense, Mr. Fallin is one prior conviction short from qualification for being—and another reason why he is not—a career offender. *United States v. Williams*, 772 F. App'x 37, 41 (4th Cir. 2019) (applying U.S.S.G. § 4A1.1(a) cmt n.1 (2011)); *see also* U.S.S.G. § 4B1.2(c) (2011).

This improper career-offender designation has burdened, and will continue to burden, Mr. Fallin with unnecessary prejudice throughout his life. This incorrect label not only affected his Guidelines range—he had a higher advisory range than he would have had—but also his *and* the government's negotiation of his plea agreement. And, critically, the label will affect his ability to reintegrate into society following his release. Unless the Court grants him relief, Mr. Fallin will forever be cast incorrectly "as a hopeless recidivist worthy of the strictest possible punishment." *Whiteside v. United States*, 748 F.3d 541, 552 (4th Cir. 2014).

**D.**      For all of these reasons, a certificate of appealability should issue because Mr. Fallin's challenge to his erroneous career-offender designation under *Davis* presents an issue that is clearly "debatable." *See Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003).

**II.** *Second*, the failure of the district court to follow clear Supreme Court precedent, as reiterated in *Davis*, on the application of the categorical approach requires reversal.  At bottom, the categorical approach concerns if and only if "the elements of the crime of conviction sufficiently match the elements" of an enumerated offense. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).  Nothing more or less is required.  The district court erred in believing otherwise.  It denied Mr. Fallin's *Davis* challenge because Mr. Fallin was not sentenced based on a predicate offense (i.e. either of his conspiracy offenses) implicating § 924(c).  But the significance of *Davis* is not limited to sentences implicating § 924(c), and the district court erroneously failed to apply the categorical approach to Mr. Fallin's conspiracy offenses to determine whether they were crimes of violence.  That error itself justifies granting the relief that Mr. Fallin seeks.

**III.** *Third*, this Court's precedent makes clear that Mr. Fallin's conspiracy offenses are simply not crimes of violence.  When he first raised his Section 2255 motion, *McCollum* had conclusively decided that a § 1959(a)(5) conspiracy to commit murder in aid of racketeering is not a crime of violence.  But the district court made no mention of it below.  More recently, *Simmons*, also conclusively decided that all RICO conspiracy offenses are categorically not crimes of violence.  The holdings of these cases reiterate what was true at the time of sentencing.  The

district court would have reached the same conclusion had it applied the categorical approach. Circuit precedent on the residual-clause analysis under the Guidelines based on the "ordinary case" categorical approach cannot stand against *Davis*'s rejection of this approach and commitment to the "traditional" categorical approach.

\* \* \* \* \*

To correct the errors at the time of Mr. Fallin's sentence, this Court should grant the certificate of appealability, vacate Mr. Fallin's sentence, and remand for resentencing.

## STANDARD OF REVIEW

This Court reviews *de novo* a "district court's legal conclusions concerning a denial of § 2255 relief." *See United States v. Jones*, 914 F.3d 893, 899 (4th Cir. 2019). That includes the proper application of the categorical approach, including the question of whether an offense is a "crime of violence" under the Guidelines. *See id.* at 899; *see also United States v. Green*, 996 F.3d 176, 184 (4th Cir. 2021).

# ARGUMENT

## I.   Mr. Fallin Is Entitled To Section 2255 Relief For The Extraordinary Misapplication Of The Career Offender Guidelines.

### A. Section 2255 Relief Is Available For Extraordinary Misapplication Of The Guidelines.

28 U.S.C. § 2255 provides that a prisoner in custody may seek to vacate, set aside, or correct his sentence based on one of the following four grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." § 2255(a). A district court may only review a sentence that does not present a constitutional or jurisdictional error if such an error demonstrates a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974). That error arises in light of "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428 (1962) (internal quotation marks omitted).

The Fourth Circuit has held that "ordinary misapplication of the [G]uidelines . . . does not amount to a miscarriage of justice." *United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999). But, it has wrestled with what constitutes an

23

"*extraordinary* misapplication." *See United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015) (emphasis added). In this vein, this Court has twice addressed whether a career-offender enhancement that is later invalidated by case law is a miscarriage of justice, with conflicting results.

1.    *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014) first answered this question in the affirmative, holding that there was a miscarriage of justice. There, Whiteside filed a Section 2255 motion challenging his career-offender enhancement in light of the en banc decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), holding that a North Carolina conviction is not punishable by more than a year in prison for a "controlled substance offense" under the Guidelines, unless the nature of the defendant's offense and his criminal history otherwise justify it. *See* 748 F.3d at 544 (citing *Simmons*, 649 F.3d at 247 & n.9). The panel held that Whiteside's Section 2255 motion challenge demonstrated a miscarriage of justice, granted his certificate of appealability, vacated his sentence, and remanded for resentencing. *See id.* at 548. The panel anchored its holding in the Supreme Court's *Buford* decision, which reasoned that "career offender status creates 'a category of offender subject to particularly severe punishment,'" and, therefore, the effect of a career-offender enhancement is extraordinary. *Id.* at 551–55 (quoting *Buford v. United States*, 532 U.S. 59, 60 (2001)). The panel further reasoned that "the advisory

24

nature of the Guidelines does not cure the harm that results from utilizing an incorrect Guidelines range as a starting point." *Id.* at 554 (citing *Peugh v. United States*, 569 U.S. 530, 546 (2013)). In sum, according to the panel, it could not "turn a blind eye to so obvious an error simply for the sake of finality":

> Were we to conclude otherwise, we would be putting "bureaucratic achievement" ahead of our task of ensuring that all those who come before us receive meaningful review of their claims. We are more than mere gatekeepers. Congress has given us the authority on collateral review to relieve errors that amount to fundamental defects in process or justice.

*Id.* at 555.

Although the panel in *Whiteside* reached this holding, the Court sitting en banc vacated the panel's decision, and affirmed the district court's dismissal of his Section 2255 petition on timeliness grounds. *See* 775 F.3d 180. The Court left open, however, the question of whether a career-offender enhancement that is later invalidated by case law is a miscarriage of justice.

**2.**     Later, in *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015), this Court again addressed this question but this time answered it in the negative, holding that no miscarriage of justice had occurred. Similar to Whiteside, Foote filed a Section 2255 motion challenging his career-offender enhancement based upon *Simmons*. *See* 784 F.3d at 932. However, Foote's petition was timely. *See id.* at 944.

25

The panel affirmed the district court's denial of his Section 2255 petition based on the "cognizability spectrum" of precedent among the Court, its sister circuits, and the Supreme Court precedent. *Id.* at 940. In its view, after "[r]eading all of th[is] [precedent] together," the panel reasoned that a "miscarriage of justice" must concern "the notion of actual innocence" and nothing more. *See id.* at 941; *see also id.* at 936–39 (discussing the cognizability spectrum and where all this precedent falls). The panel emphasized that it was "hesitant" to declare Foote's issue a "fundamental defect or a complete miscarriage of justice" due to the advisory nature of the Guidelines. *Id.* at 941; *see also id.* ("Unlike a statute, the career offender provision is one part of a series of guidelines meant to *guide* the district court to the proper sentence.") (emphasis in original). The panel also struggled with "what the dividing line would be between a fundamental defect and mere error" with "errors in application of the Guidelines." *Id.* at 943. But, the panel ultimately reasoned that Foote's invalid career-offender enhancement was not a "defect of a fundamental nature" because it "would be remiss to place an erroneous Guidelines classification under an advisory scheme in the same category as violation of a statute or constitutional provision." *Id.* at 942.

**3.** *Davis*, however, now supersedes *Foote*. An erroneous Guidelines classification *is* comparable to a violation of a statute or constitutional provision.

*Davis* addressed the constitutionality of § 924(c)'s residual clause in the context of whether the petitioners' conspiracy charge was a predicate "crime of violence." *See* 139 S. Ct. at 2325. As always, the Court recognized the necessity of applying the categorical approach when determining whether an offense qualifies as a "crime of violence." *See id.* at 2326. The purpose of the categorical approach is to *concretely* determine whether an offense qualifies as a "crime of violence." *See id.* The Court noted that problems in applying the categorical approach to a residual clause was frustrating the approach's purpose. *See id.* Lower courts were resorting to a so-called "ordinary case" categorical approach when addressing the residual clause. *See id.* This "ordinary case" categorical approach called for courts to guess at whether an offense qualified as a crime of violence. *See id.* The Court explained, "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326 (citing *Johnson*, 576 U.S. 591 (2015) and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)).

The government argued for the Court to abandon the "traditional categorical approach." *Id.* at 2327. Instead, the government pushed for the Court to adopt a "case-specific approach" "look[ing] to the defendant's actual conduct in the predicate offense." *Id.* at 2327 (internal quotation marks and citation omitted). The

27

Court rejected this "newly minted" approach. *See id.* at 2327. Rather, the Court reasoned that the plain language of § 924(c) and other statutes with a "residual clause" clearly mandate the traditional categorical approach. *See id.* at 2328–32.

The Court did not just stop there. The Court emphasized that "the consequences in this case may be of [a] *constitutional* dimension." *Id.* at 2327 (emphasis added). Those consequences involved "the twin constitutional pillars of due process and separation of powers." *Id.* at 2325. The former was implicated by the residual clause because it fails to "give people of common intelligence fair notice of what the law demands of them." *Id.* at 2325 (internal quotation marks and citations omitted). The latter was implicated by the residual clause because it "threaten[ed] to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Id.*

Therefore, *Davis* created the blueprint for defendants to assert residual clause challenges based on violations of constitutional dimensions. Mr. Fallin has correctly followed this blueprint. Section 924(c)'s definition of a "crime of violence" is nearly identical to that definition in the 2011 Guidelines given that the Guidelines definition "traces its origins to the Comprehensive Crime Control Act of 1984." *Id.* at 2330. The 2011 Guidelines contain a "residual clause," again, like that of § 924(c). *Davis*

28

makes clear the Court's criticism of an residual-clause analysis wherever it arises because the analysis "depend[s] on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326. And, again, *Davis* emphasizes that the "traditional categorical" approach is controlling for a "crime of violence" determination—not an "ordinary" approach, "newly minted" approach, or any other approach. *Id.* at 2327; *see also United States v. Garcia-Cartagena*, 953 F.3d 14, 17 & n.2, 24 (1st Cir. 2020) (in the context of § 7B1.1 of the Guidelines (grade violations), and citing to *Davis*, explaining that the categorical approach controls a crime of violence determination in light of the plain language of § 4B1.2 of the Guidelines). Focusing on *Davis* as a § 924(c) case, like the government and district court did, overlooks what *Davis* actually held and its significance for this case.

### B. Mr. Fallin's Improper Career-Offender Designation Was Wrong In The First Instance—It Was Not Simply Invalidated By Later Case Law.

Moreover, to the extent *Foote* is not superseded by *Davis*, *Foote* still does not control here.

**1.** In *Foote*, this Court held that a challenge to one's change in career-offender designation, "*originally determined correctly* under the advisory Guidelines," is not cognizable on collateral review. 784 F.3d at 939 (emphasis added). However, Mr. Fallin's claim is more than a run-of-the-mill claim that the

district court misapplied the sentencing guidelines. Unlike Foote's, Mr. Fallin's career-offender designation was "incorrect *at the time of [his] sentencing*; it was not later invalidated by case law. *Alston v. United States*, 290 F.Supp.3d 542, 549 (E.D. Va. 2017) (emphasis in original) (citing *Foote*, 784 F.3d at 939). *United States v. McCollum*, 885 F.3d 300, 304 (4th Cir. 2018) and *United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021) simply made clear what was evident at the time of his sentencing: Mr. Fallin's conspiracy convictions did not constitute "crimes of violence" thus precluding as a matter of law a finding that he was a career offender. *McCollum* held that "§ 1959(a)(5) is not categorically a crime of violence because conspiracy under that provision is, in fact, broader than generic conspiracy, and precedent directs that we consider the inchoate crime of conspiracy and its object independently." 885 F.3d at 303. And *Simmons* held that "a RICO conspiracy, even when denominated as "aggravated," does not categorically qualify as a "crime of violence." 11 F.4th at 248. These holdings did not change the law. They simply identified what was already clear—when analyzed under the required categorical approach, Mr. Fallin's conspiracy offenses are not "crimes of violence." Therefore, Mr. Fallin's career-offender designation was incorrectly determined from the get-go. *See Alston*, 290 F.Supp.3d at 549 ("Indeed, there was clear procedural error that

occurred before and during Petitioner's sentencing that directly resulted in a significant sentencing enhancement.").

**2.** On top of that, Mr. Fallin also did *not* have two qualifying predicate offenses to be a career offender. The Guidelines require the defendant to have been convicted of two prior felonies[6] before the relevant offense for career-offender designation. *See* U.S.S.G. § 4B1.2(c) (2011). Those predicate offenses, however, must have been imposed within the 15-year time limit: predicate offenses "imposed more than fifteen years prior to the defendant's commencement of the instance offense [are] not counted unless the defendant's incarceration extended into this fifteen-year period." *Williams*, 772 F. App'x at 41 (quoting U.S.S.G. § 4A1.1(a) cmt n.1 (2011)); *see also* U.S.S.G. § 4B1.2(c) (2011).

While Mr. Fallin's PSR relies on (1) his 1980 bank robbery conviction and (2) his 1987 conspiracy to distribute heroin conviction as his two predicate offenses, *see* SA 8–10, his former conviction does not in fact meet the fifteen-year time limit. Mr. Fallin finished serving his bank robbery sentence in 1994 and finished serving his distribution conspiracy sentence, at the latest, in 2001. *See* SA 9–11. *Eighteen years* after he served his bank robbery sentence, on May 22, 2012, Mr. Fallin pled

---

[6] The predicate two felonies must also be crimes of violence or controlled substance offenses, although one of each type is also enough to satisfy the career-offender enhancement. U.S.S.G. § 4B1.2(c) (2011).

guilty[7] to the relevant offenses.  *See* SA 4.  Thus, the bank robbery conviction does

not qualify as a predicate offense for career-offender status.  This missing predicate

offense combined with the reality that neither of his then-instant conspiracy offenses

was categorically a crime of violence demonstrates how far from a career offender

Mr. Fallin was at the time of his sentencing.

### C. Without This Court's Intervention, The Prejudice Associated With Mr. Fallin's Improper Career-Offender Designation Will Affect The Remainder Of His Life.

Furthermore, Mr. Fallin's improper career-offender designation at the time of

sentencing was, and continues to be, highly prejudicial to him.  Mr. Fallin faced a

considerably higher advisory range at the time of sentencing.  *See Alston*, 290

F.Supp.3d at 549.  That was in error.  *See United States v. Winbush*, 922 F.3d 227,

231 (4th Cir. 2019) (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345

(2016) ("When a defendant is sentenced under an incorrect Guidelines range—

*whether or not the defendant's ultimate sentence falls within the correct range*—the

error itself can, and most often will, be sufficient to show a reasonable probability

of a different outcome absent the error") (emphasis added)).

---

[7] "The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere."  U.S.S.G. § 4B1.2(c) (2011).

The Guidelines inform and instruct the district court's determination of an appropriate sentence. In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence. *See Molina-Martinez*, 136 S. Ct. at 1346. Without the career-offender designation, Mr. Fallin's final criminal history classification would have been a class IV instead of VI and the advisory guidelines range would have been 262 to 327 months. *See* JA131. With the career-offender designation, the advisory range was instead 324 to 405 months. *See* JA53.

The advisory nature of the Guidelines does not cure the harm that results from utilizing an incorrect Guidelines range as a starting point. *See Peugh v. United States*, 569 U.S. 530, 546 (2013). Nor does the fact that Mr. Fallin was sentenced beneath the applicable statutory maximum mitigate the mistake. *See United States v. Wheeler*, 886 F.3d 415, 431–32 (4th Cir. 2018) (finding "no merit in the notion that Appellant could have been assigned the same sentence even with the correct mandatory minimum, as the Supreme Court has roundly rejected that argument in *Hicks* [*v. Oklahoma*, 447 U.S. 343 (1980)], explaining, "[s]uch an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law.") (first alteration supplied). "[W]hen a defendant shows that the district court used an incorrect range, he should not be barred from relief on appeal simply because there is no other evidence that the sentencing outcome would have been different had the correct

range been used." *Molina-Martinez*, 136 S. Ct. at 1346. And further, just like an improperly longer sentence, the "obvious judicial mistake" of an improper career-offender designation erodes the "public's perception of the fairness and integrity of the judicial process," *United States v. Sabillon-Umana*, 772 F.3d 1328, 1335 (10th Cir. 2014) (Gorsuch, J.), and constitutes a "miscarriage of justice." *United States v. Dahl*, 833 F.3d 345, 359 (3d Cir. 2016).

Because of Mr. Fallin's improper career-offender designation, the government's and defense counsel's mutual mistake about that designation defined the "benefit of the bargain" for both parties during plea negotiations. *See Alston*, 290 F.Supp.3d at 549. He negotiated for, and ultimately received, a sentence 15 months higher than the average sentence for career offenders. *See* United States Sentencing Guidelines, *2015 Quick Facts*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Career_Offender_FY15.pdf.pdf (noting the average sentence between 2011 and 2015 "imposed decreased from 165 to 145 months.").[8] But, he would be forever classified as a career offender.

---

[8] Pursuant to Fed. R. Evid. 201(c)(2), Mr. Fallin moves for this Court to take judicial notice of the Commission's statistics on the average sentence imposed for career offenders at the national level in 2011. This data is appropriate for judicial notice as it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). "The

34

"Career offender" is not a label to throw around lightly. Once a defendant receives that designation, that person is casted "as a hopeless recidivist worthy of the strictest possible punishment." *Whiteside*, 748 F.3d at 552. That view of a defendant will carry "adverse collateral consequences" for the remainder of one's life. *Daniels v. United States*, 2019 WL 4167325, at 6 (M.D. Tenn. Sept. 3, 2019) (erroneous career-offender designation under the Armed Career Criminal Act). Such consequences negatively affect one's ability "to engage in certain businesses, serve as an official of a labor union, vote in any . . . election[,] or serve as a juror," among other examples. *United States v. Fluker*, 891 F.3d 541, 550 (4th Cir. 2018) (internal quotation marks and citation omitted) (alteration in *Fluker*).

### D. Mr. Fallin Presents A "Debatable" Issue Warranting Issuance Of A Certificate Of Appealability

A certificate of appealability should issue in a case with a "debatable" issue. *See Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003). As explained above, Mr. Fallin presents this Court with a plainly "debatable" issue: His erroneous career-offender designation violates his due process right to liberty as stated in *Davis*.[9] *See*

---

dataset is simply a compilation of information available in the public record." *See United States v. White*, 620 F.3d 401, 416 (4th Cir. 2010).

[9] Equal protection is also involved here because someone today would not have been considered a career offender under the 2011 Guidelines, including Mr. Fallin. *See Stop Reckless Economic Instability Caused by Democrats v. Federal Election Com'n*, 814 F.3d 221, 233 (4th Cir. 2016) (explaining the Fifth

*Whiteside*, 748 F.3d at 555 & n.15; *see also Foote*, 784 F.3d at 935 (certificate of appealability issued for similar due process right). This Court should issue a certificate of appealability.

## II. THE DISTRICT COURT ERRED BY FAILING TO DETERMINE WHETHER THE CONSPIRACY OFFENSES WERE "CRIMES OF VIOLENCE" UNDER THE CATEGORICAL APPROACH.

Since *Taylor v. United States*, 495 U.S. 575 (1990), district courts evaluate whether a conviction qualifies as a crime of violence using the categorical approach. The categorical approach focuses "solely on whether the elements of the crime of conviction sufficiently match the elements" of an enumerated offense. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Application of this approach requires the following four steps: (1) the court must identify the definition at issue (here, "crime of violence" in the career offender provision of the Guidelines), *see United States v. Dozier*, 848 F.3d 180, 185 (4th Cir. 2017); (2) the court must determine the offense of comparison, i.e. the statute of conviction, *McCollum*, 885 F.3d at 307; (3) the court must determine the elements of the statute of conviction, *id.*; and (4) the

---

Amendment's Due Process Clause has an equal-protection component). Further, had the district court properly calculated the Guidelines, Mr. Fallin would not have been placed in the category of persons considered "hopeless recidivist worthy of the strictest possible punishment." *Whiteside*, 748 F.3d at 552.

court must compare the elements of the statute of conviction to those in the definition at issue, *id.* at 308.

The district court undertook none of these steps. Rather, it focused exclusively on whether Mr. Fallin was convicted of an 18 U.S.C. § 924(c) offense. He was not. Therefore, in its view, Mr. Fallin's contention that "he was improperly classified as a career offender under the United States Sentencing Guidelines" did not justify any (or *Davis*-specific) relief. JA129.

The district court's analysis was plainly wrong. Regardless of whether Mr. Fallin was convicted under 18 U.S.C. § 924(c), the district court was required to conduct a categorical approach analysis to determine whether Mr. Fallin's conspiracy offenses were crimes of violence. *See Taylor*, 495 U.S. at 602 (explaining that, to apply the categorical approach to an offense at issue, a "court [is] to look only to the fact of conviction and the statutory definition" of the offense at issue); *see also United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013) (citing *Taylor*, 495 U.S. at 599) ("The categorical approach focuses on the elements of the prior offense rather than the conduct underlying the conviction"). A district court *must* conduct this analysis. "A defendant may not receive an enhanced sentence merely because the label attached to his crime of conviction is listed in the [Guidelines]." *McCollum*, 885 F.3d at 304. Instead, sentencing courts must "follow

37

a well-established procedure to determine whether a defendant's prior [or instant] conviction qualifies as . . . [a] crime of violence under the Guidelines." *Id.*

Had the district court applied the categorical approach, it would have concluded that neither of Mr. Fallin's conspiracy offenses is a crime of violence under the Guidelines. Where, as here, a district court fails to apply the categorical approach, the district court reversibly errs. *See United States v. Dahl*, 833 F.3d 345, 357 (3d Cir. 2016) ("The District Court erred in failing to apply the categorical approach and subsequently applying U.S.S.G. § 4B1.5."). This in itself is a fundamental defect in sentencing demonstrating a complete miscarriage of justice and warrants the relief that Mr. Fallin is seeking. *See, e.g., Alston*, 290 F. Supp. 3d at 548.

### III. NEITHER OF MR. FALLIN'S CONSPIRACY OFFENSES IS A CRIME OF VIOLENCE UNDER THE GUIDELINES.

The Guidelines mandatee that a "career offender" will receive a Criminal History Category ("CHC") VI and offense levels at or near the statutory maximum penalty of the offense of conviction. U.S.S.G. § 4B1. A "career offender" is defined, in relevant part for this Section, as a defendant who has an "instant offense of conviction [that] is a felony," and this felony 'is either a crime of violence or a controlled substance offense." § 4B1.1(a) (emphasis added). "Crime of violence" means an applicable offense that (1) "has [as] an element the use, attempted use, or

threated use of physical force against the person of another" (force clause); (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives" (enumerated clause) or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (residual clause).[10] 4B1.2(a).

As stated earlier, determining whether a conviction is a "crime of violence" requires application of the categorical approach. In so applying, a district court must compare the elements of the "generic offense" of the conviction to the statutory definition at issue. *United States v. Rangel-Castaneda*, 709 F.3d 373, 376 (4th Cir. 2013) ("[T]he Supreme Court held that where Congress has not indicated how a prior offense enumerated in a sentencing enhancement statute is to be interpreted, it should be understood to refer to 'the generic, contemporary meaning' of the crime." (quoting *Taylor*, 495 U.S. at 598)). When an inchoate crime (i.e. conspiracy) is the conviction at issue, the analysis includes two sets of elements: those of the generic inchoate crime *and* the generic underlying offense. *See Dozier*, 848 F.3d at 185. There is a categorical match "only if the statute's elements are the same as, or

---

[10] As noted, *supra* note 1, in 2016, the Commission removed the residual clause from the definition of "crime of violence" following the Supreme Court's decision in *Johnson*, 576 U.S. 591 (2015). *See* U.S.S.G. amendment 798 (eff. Aug. 1, 2016).

narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S.

254, 257 (2013).

If the statute of conviction is broader than the generic offense, the sentencing

court must determine whether the statute is divisible or indivisible. A *divisible*

statute "lists 'potential offense *elements* in the alternative,' and thus includes

"multiple, alternative versions of the crime." *United States v. Bryant*, 949 F.3d 168,

173 (4th Cir. 2020) (emphasis in original) (quoting *Descamps*, 570 U.S. at 260, 262

(noting that a divisible statute "renders opaque which element played a part in the

defendant's conviction")). For example, a statute with subsections (a) through (c)

that sets out burglary of: (a) a building, (b) a motor vehicle, or (c) an air or water

craft, is a divisible statute because it sets out three separate burglary crimes. *See*

*Nijhawan v. Holder*, 557 U.S. 29, 35 (2009). For a statute to be divisible, the

alternative elements must provide for different *crimes* within the same set of

elements, rather than alternative means which are only different *ways of meeting one*

*element* in that set. *See Descamps*, 570 U.S. at 264 n.2; *see also United States v.*

*Cabrera-Gutierrez*, 756 F.3d 1125, 1137 n.16 (9th Cir. 2013) ("[U]nder *Descamps*,

what must be divisible are the elements of the crime, not the mode or means of

proving an element.").

Only if the statute of conviction is divisible into separate crimes do courts use the "modified categorical approach" to determine the defendant's statute of conviction and whether that offense fits within a given definition. *Mathis*, 136 S. Ct. 2243 at 2249. Under the modified categorical approach, courts seeking to clarify which of the alternative elements in a divisible statute led to the conviction are permitted to "consult a limited class of documents," (known as "*Shepard*" documents), including a charging document or plea agreement. *Descamps*, 570 U.S. at 257; *Shepard v. United States*, 544 U.S. 13, 16 (2005). "[T]he modified [categorical] approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." *Mathis*, 136 S. Ct. at 2253. "[O]nce a court has isolated the specific crime of conviction, it must apply the traditional categorical approach . . . to determine whether that crime constitutes a 'crime of violence.'" *Simmons*, 11 F.4th 239, 258 (4th Cir. 2021) (quoting *Bryant*, 949 F.3d at 173). Thus, once the sentencing court has determined the elements of conviction, it compares the crime of conviction with the generic offense. *See Descamps*, 570 U.S. at 263–64. An offense whose elements are broader than the generic crime cannot be used as a career offender predicate. *Id.* at 261.

41

Fourth Circuit precedent following Mr. Fallin's sentencing makes clear that his conspiracy convictions are not crimes of violence. At the time of the district court's decision below issued, this Court had concluded that conspiracy to commit murder in aid of racketeering, pursuant to 18 U.S.C. § 1959(a)(5), is categorically not a crime of violence under the Guidelines. *See McCollum*, 885 F.3d at 307. In *McCollum*, the Court reasoned that the statute "does not require an overt act" and thus "criminalizes a broader range of conduct than that covered by generic conspiracy." *Id.* at 309.

Further, since the district court's decision below issued, the Court held in *Simmons* that, even if the RICO statute is divisible, *all* RICO conspiracy convictions are categorically not crimes of violence. *See* 11 F.4th at 257, 261. This Court reasoned that several of the statutorily provided racketeering acts could be completed without force. *See id.* at 260. That is because the categorical approach requires an analysis of "*the entire class* of qualifying racketeering acts, not just the specific ones that Simmons and Mitchell committed in this case." *Id.* (emphasis in original). For example, the Court explained that, although "engag[ing] in racketeering activity involving the distribution of controlled substances . . . would justify the imposition of a life sentence . . . under 18 U.S.C. § 1963(a)," such "drug

42

distribution *does not* require the use, attempted use, or threatened use of physical force." *Id.* at 259 (emphasis added).

Here, Mr. Fallin's conspiracy offenses are a RICO offense and § 1959(a)(5) offense. Had the district court applied the categorical approach as it was required to do, Mr. Fallin would have had the same outcome as the defendants in *McCollum* and *Simmons*.[11] These cases together do not provide new law to invalidate his career offender status. Rather, *McCollum* and *Simmons* are dispositive that Mr. Fallin was *never* a career offender because his offenses are categorically not crimes of violence. *Davis* provides him the means to seek relief, and obtain a ruling that his conspiracy offenses are not crimes of violence and could not be used to designate him as a "career offender."

---

[11] This Court has precedent on a residual-clause analysis where it applies the "ordinary case" categorical approach under the Guidelines. *See, e.g., United States v. Merchant*, 731 Fed. App'x 204 (4th Cir. 2018) (explaining that a residual-clause inquiry asks whether the conduct encompassed by the elements of the offense, in the *ordinary case*, presents a serious potential risk of injury to another.") (emphasis in original) (internal quotation marks and citation omitted). As stated earlier, the "ordinary case" categorical approach directs that a court "must use the statutory definition of an offense to imagine its 'ordinary case,' and then consider whether this imagined ordinary case entails a 'substantial risk' of force." *United States v. Simms*, 914 F.3d 229, 234 (4th Cir. 2019) (en banc). However, *Davis*'s holding is clear that *only* "traditional category approach"—not the ordinary case approach— controls a "crime of violence" determination. *Davis*, 139 S. Ct. at 2326. This Court's precedent holds consistently with *Davis*, as *McCollum* and *Simmons* used the traditional categorical approach when making "crime of violence" determinations. *See Simmons*, 11 F.4th at 260.

## CONCLUSION

This Court should grant a certificate of appealability, vacate Mr. Fallin's sentence, remand for resentencing, and order that Mr. Fallin's conspiracy offenses are not crimes of violence, and, therefore, he is not a "career offender" under the Guidelines.

December 22, 2021                    Respectfully submitted,

WEST VIRGINIA UNIVERSITY            /s/ Lawrence D. Rosenberg
COLLEGE OF LAW                      _____
U.S. SUPREME COURT                  Lawrence D. Rosenberg
LITIGATION CLINIC                   JONES DAY
101 Law Center Drive                51 Louisiana Avenue, N.W.
Morgantown, WV 26056                Washington, D.C. 20001
                                    (202) 879-3939
                                    ldrosenberg@jonesday.com

                                    /s/ Stephen C. Scott
                                    _____
                                    Stephen C. Scott
                                    JONES DAY
                                    500 Grant Street, Suite 4500
                                    Pittsburgh, PA 15219
                                    (412) 394-9578
                                    scscott@jonesday.com

            *Counsel for Defendant-Appellant Derick Fallin*

## REQUEST FOR ORAL ARGUMENT

In accordance with Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Rule 34(a), Mr. Fallin respectfully requests oral argument. This appeal involves important questions about 28 U.S.C. § 2255 relief, and oral argument would substantially aid the Court's review.

December 22, 2021

*/s/ Stephen C. Scott*
Stephen C. Scott

# CERTIFICATE OF COMPLIANCE

Under Federal Rule of Appellate Procedure 32(g), I certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Rule 32(a)(7)(B)(i). Excluding exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f), this brief contains 10,089 words. This brief, moreover, was prepared in proportionally spaced typeface, using Microsoft Word 2016, in 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(g)(1), I have relied upon the word count of this word-processing system in preparing this certification.

December 22, 2021                    */s/ Stephen C. Scott*
                                     Stephen C. Scott

## CERTIFICATE OF SERVICE

In accordance with Fourth Circuit Rule 25(a), I certify that on December 22, 2021, I electronically filed this brief with the Clerk of Court by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

December 22, 2021         */s/ Stephen C. Scott*
                                   Stephen C. Scott